IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

STATE OF ARIZONA ex rel. WILLIAM G. MONTGOMERY,
Maricopa County Attorney, *Petitioner,*

*v.*

THE HONORABLE JOSE PADILLA, Judge of the SUPERIOR COURT OF
THE STATE OF ARIZONA, in and for the County of Maricopa,
*Respondent Judge,*

CHRIS SIMCOX, a.k.a. CHRISTOPHER ALLEN SIMCOX,
*Real Party in Interest.*

No. 1 CA-SA 15-0087

FILED 5-8-2015

Petition for Special Action from the Superior Court in Maricopa County
No. CR2013-428563-001
The Honorable Jose S. Padilla, Judge

**JURISDICTION ACCEPTED; RELIEF DENIED**

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Keli B. Luther
*Counsel for Petitioner*

Chris Simcox, Phoenix
*Pro Per Real Party in Interest*

Office of the Legal Defender, Phoenix
By Robert Shipman, Sheena Chawla
*Advisory Counsel for Real Party in Interest Simcox*

Wilenchik & Bartness P.C., Phoenix
By John D. Wilenchik
*Counsel for Amicus Curiae M.A. on behalf of J.D.*

Arizona Voice for Crime Victims, Tempe
By Colleen Clase
*Counsel for Amicus Curiae A.S. on behalf of Z.S.*

Arizona Prosecuting Attorneys' Advisory Counsel, Phoenix
By Elizabeth B. Ortiz
*Counsel for Amicus Curiae Arizona Prosecuting Attorney's Advisory Counsel*

Pima County Public Defender's Office, Tucson
By David J. Euchner

Maricopa County Public Defender's Office, Phoenix
By Mikel P. Steinfeld, Amy Kalman

Osborn Maledon, P.A., Phoenix
By Kathleen E. Brody
*Counsel for Amicus Curiae Arizona Attorneys for Criminal Justice*

---

**OPINION**

Judge Randall M. Howe delivered the opinion of the Court, in which Presiding Judge Margaret H. Downie and Judge Patricia K. Norris joined.

---

**H O W E**, Judge:

**¶1** The State of Arizona seeks special action relief from the trial court's refusal to restrict Defendant Chris Simcox from personally cross-examining the child victims and witness in his trial on several sex charges. We accept jurisdiction because the State has no adequate remedy by appeal and the issue is one of first impression and statewide importance. Ariz. R.P. Spec. Act. 1(a); *Ariz. Dep't of Econ. Sec. v. Superior Court (Angie P.)*, 232 Ariz. 576, 579 ¶ 4, 307 P.3d 1003, 1006 (App. 2013).

2

¶2          We deny relief, however. A trial court may exercise its discretion to restrict a self-represented defendant from personally cross-examining a child witness without violating a defendant's constitutional rights to confrontation and self-representation. It can do so, however, only after considering evidence and making individualized findings that such a restriction is necessary to protect the witness from trauma. Because the State did not present such evidence—and in fact eschewed the opportunity to present evidence when invited—the trial court had no basis to restrict Simcox from cross-examining the child witnesses.

## FACTS AND PROCEDURAL HISTORY

¶3          The State has charged Simcox with three counts of sexual conduct with a minor, two counts of child molestation, and one count of furnishing harmful items to minors. The alleged victims are Simcox's 8-year-old daughter Z.S. and Z.S.'s 8-year-old friend, J.D. The State plans to call Z.S. and J.D. to testify about the incidents that form the bases of the charges. The State also plans to call as a witness Z.S.'s 7-year-old friend E.M. to testify about an alleged incident she had with Simcox. The State will seek to admit E.M.'s testimony under Arizona Rule of Evidence 404(c) to show that Simcox has an aberrant sexual propensity to commit the charged offenses.

¶4          Simcox requested that he be allowed to represent himself in the criminal proceedings pursuant to the Sixth Amendment to the United States Constitution and *Faretta v. California*, 422 U.S. 806 (1975). The trial court granted the request but nevertheless appointed advisory counsel to assist him.

¶5          In response to Simcox's invocation, the State requested that the trial court accommodate the child witnesses by restricting Simcox from personally cross-examining them and requiring that his advisory counsel conduct the cross-examinations. The State supported its request with email correspondence from (1) Z.S.'s mother, explaining her outrage that Simcox would cross-examine Z.S., recounting Z.S.'s fear that Simcox would "hurt her feelings again," and stating that personal cross-examination would severely hinder Z.S.'s psychological recovery; (2) J.D.'s mother, explaining how the incident with Simcox has negatively affected J.D.'s behavior and stating that she feared that allowing Simcox to address J.D. would set J.D. "back in her healing and quite possibly exacerbate her symptoms and anxiety/panic attacks"; and (3) E.M.'s mother, stating that E.M. is as much a victim as Z.S. and should not "be punished, more than once, by any adult who used the tenure of age and trust against her." Simcox objected, arguing

that restricting him from personally conducting the cross-examinations would interfere with his right of self-representation.

¶6        At the hearing on the State's request, the trial court asked the State to present its evidence, but the State demurred, arguing that evidence was unnecessary. The trial court disagreed. It noted that the United States Supreme Court held in *Maryland v. Craig*, 497 U.S. 836, 855 (1990), that an order restricting a defendant's right to confront a child witness had to be "case-specific" and that the court must hear evidence to determine whether the restriction is necessary to protect the particular child. The State responded that *Craig* was inapplicable because the defendant in that case was not representing himself. The State relied on *Fields v. Murray*, 49 F.3d 1024 (4th Cir. 1995), in which the circuit court held that a state trial court had not violated a defendant's rights by restricting him from personally cross-examining his child victim even though it had not considered any evidence that the victim would be traumatized.

¶7        The trial court denied the State's request "on the status of this record." The court acknowledged the mothers' letters, but ruled that "there is simply no showing that conf[ront]ing [Simcox] in and of itself will cause further trauma." The State moved to stay the proceedings, which the trial court denied. The State then petitioned this Court for special action relief and requested a stay of the trial. This Court denied the stay but affirmed the briefing schedule to consider the petition. Z.S.'s mother subsequently sought and obtained an emergency stay from the Arizona Supreme Court pending this Court's review of the petition.

## DISCUSSION

¶8        The State argues that the trial court erred in denying its request to restrict Simcox from personally cross-examining the children. The State contends that a defendant charged with sex offenses against children may be categorically barred from personally cross-examining the child witnesses. We review purely legal or constitutional issues de novo, *State v. Booker*, 212 Ariz. 502, 504 ¶ 10, 135 P.3d 57, 59 (App. 2006), but defer to the trial court's factual findings unless they are clearly erroneous, *State v. Forde*, 233 Ariz. 543, 556 ¶ 28, 315 P.3d 1200, 1213 (2014).

¶9        On the record before it, the trial court did not err in refusing to restrict Simcox from personally cross-examining the children. A criminal defendant has the constitutional right to confront the witnesses against him face-to-face, and this right is implemented primarily through cross-examination. *Kentucky v. Stincer*, 482 U.S. 730, 736 (1987); *State v. Vess*, 157

Ariz. 236, 237–38, 756 P.2d 333, 335–36 (App. 1988). When a defendant exercises his right to represent himself, he has the right to personally cross-examine the State's witnesses. *McKaskle v. Wiggins*, 465 U.S. 168, 174 (1984) ("The *pro se* defendant must be allowed . . . to question witnesses."); *see also Faretta*, 422 U.S. at 818 (providing that the Sixth Amendment "grants to the accused personally the right to make his defense").

¶10 Of course, this does not mean that the right of a self-represented defendant to personally conduct cross-examination is absolute. Although the face-to-face component of cross-examination is not "easily dispensed with," *Craig*, 497 U.S. at 850, denying a face-to-face confrontation will not violate the Confrontation Clause when it is "necessary to further an important public policy" and the reliability of the testimony is otherwise assured, *id.* The United States Supreme Court recognized in *Craig* that a state's interest in protecting the physical and psychological well-being of child abuse victims is sufficiently important to justify restrictions on cross-examination if the State makes an adequate showing of necessity. *Id.* at 853–55. Such a finding of necessity "must of course be a case-specific one," *id.* at 855, and the trial court must hear evidence to determine whether the restriction is necessary to protect the child's welfare, *see id.* at 855–56 (considering cross-examination by closed-circuit television). Necessity cannot be presumed without evidence. *See Coy v. Iowa*, 487 U.S. 1012, 1021 (1988) (rejecting "legislatively imposed presumption of trauma" when considering statutory limitations on cross-examination of child abuse victims; "something more than the type of a generalized finding underlying such a statute is needed").

¶11 In denying the State's request, the trial court recognized and followed the requirements of the Confrontation Clause and the Supreme Court precedent interpreting it. The court understood that it could not restrict Simcox from personally cross-examining the child witnesses without hearing evidence and making case-specific findings that restricting his ability to personally cross-examine the witnesses was necessary to protect each child from trauma. With that understanding, the court asked the State to present its evidence, but the State declined to do so. Without evidence, the court was constrained to deny the State's request. Although the State did present the correspondence from the children's mothers, the court interpreted the correspondence to explain the general trauma the children were suffering from Simcox's alleged actions and the trial. But general trauma is not sufficient to restrict cross-examination; the trauma must be caused specifically by the personal cross-examination. *See Craig*, 497 U.S. at 856 ("The trial court must also find that the child witness would be traumatized, not by the courtroom generally, but by the presence of the

defendant."). Upon our review, we cannot say that the trial court clearly erred in its interpretation of the correspondence. *See Forde*, 233 Ariz. at 556 ¶ 28, 315 P.3d at 1213 (factual findings reviewed for clear error).

¶12 This procedure—restricting cross-examination of child witnesses only upon a case-specific showing that such a restriction is necessary—is nothing new. Arizona allows a child to testify in a criminal proceeding via closed-circuit television or by prior recording, A.R.S. § 13–4253, but only after the trial court makes "an individualized showing of necessity," *State v. Vincent*, 159 Ariz. 418, 429, 768 P.2d 150, 161 (1989) (relying on *Coy*, 487 U.S. at 1021, and *Vess*, 157 Ariz. at 238, 756 P.2d at 335). A generalized conclusion that any child would be traumatized by testifying in the presence of the defendant-parent is not sufficient to invoke the statute. *Vincent*, 159 Ariz. at 428, 768 P.2d at 160.

¶13 *Vincent* is instructive about the need for case-specific findings. There, two young children were witnesses in their father's trial for murdering their mother. *Id.* at 420, 768 P.2d at 152. Pursuant to § 13–4253, the State moved to record the children's testimony and to present it at trial. *Id.* at 426, 768 P.2d at 158. Without considering any evidence that the children would suffer trauma if required to testify at trial, the trial court permitted the recording, ruling that "children . . . of such tender age . . . could be traumatized due to the severe nature, [and] severity of the crime charged," and that it was in their best interests "not to look upon the face of their father" during their testimony. *Id.* The children's testimony was then recorded, with the prosecutor, defense counsel, the children's foster mother, and the trial judge present; the defendant was in another room observing the testimony and had telephonic access to his counsel. *Id.* at 157, 768 P.2d at 425.

¶14 The Arizona Supreme Court ruled this procedure violated the defendant's confrontation rights because the trial court had made no individualized finding that recording the children's testimony was necessary:

> *Coy* and *Vess* both tell us at a minimum that such generalized conclusions do not suffice to justify a substitute for face-to-face confrontational testimony. Because there were no particularized findings concerning the comparative ability of the Vincent children to withstand the trauma of face-to-face testimony, as contrasted with the trauma of a videotaped procedure with their father shielded from their view, we hold

that A.R.S. § 13–4253 was applied in such a way as to violate the defendant's constitutional right to confrontation.

*Id.* at 428–29, 768 P.2d at 160–61. The principle is clear: restrictions on a defendant's confrontation rights cannot be justified without individualized findings.

**¶15**      Apparently to avoid this analysis, the State repeatedly notes that it is not seeking any accommodation under § 13–4253. But the issue is not whether the statute is invoked; it is whether the Confrontation Clause permits a trial court to restrict a self-represented defendant from personally cross-examining the witnesses against him. The United States Supreme Court in *Craig*, our supreme court in *Vincent*, and our own court in *Vess* hold that a defendant's right to cross-examine child witnesses may not be restricted unless the trial court makes case-specific findings that the restriction is necessary to protect them from the trauma caused by the cross-examination. *Craig*, 497 U.S. at 855; *Vincent*, 159 Ariz. at 428–29, 768 P.2d at 160–61; *Vess*, 157 Ariz. at 238, 756 P.2d at 335. Because the State did not present evidence from which the trial court could have made individualized, case-specific findings that the children here required protection from being personally cross-examined by Simcox, the trial court did not err by denying the State's request for a restriction.

**¶16**      The State's contention that no such case-specific findings are necessary misapprehends the nature of a criminal defendant's rights. First, the State argues that restricting Simcox from personally cross-examining the children does not affect his Sixth Amendment right to represent himself because that right does not include a right to personally conduct cross-examination. The State claims this is so because the trial court has the authority under Arizona Rule of Evidence 611 to require advisory counsel to conduct witness examination without infringing on a defendant's right of self-representation. The State cites *State v. Wassenaar*, in which we held that the trial court did not violate a defendant's right to self-representation by requiring that advisory counsel conduct the direct examination of the defendant. 215 Ariz. 565, 573 ¶ 29, 161 P.3d 608, 616 (App. 2007).

**¶17**      But *Wassenaar* does not affect the self-represented defendant's right to conduct the examination of other witnesses. Advisory counsel's participation in that case was necessary because of the question-and-answer format of direct examination; the defendant could hardly be expected to question himself on the stand. *Id.* at ¶ 29, 161 P.3d at 616. But no such necessity existed with witnesses other than the defendant; the defendant personally examined the other witnesses. *Id.* Here, except when

Simcox testifies himself, his right to self-representation presumptively allows him to personally examine—and cross-examine—the witnesses. *McKaskle*, 465 U.S. at 174 ("The *pro se* defendant must be allowed . . . to question witnesses.").

**¶18** Second, the State argues that the restriction does not affect Simcox's right to confront witnesses because while he would be barred from conducting the cross-examination personally, he would remain in the courtroom and have a face-to-face confrontation with the children, which is all the Confrontation Clause guarantees him. This argument, however, fails to account for the effect that the right to self-representation has on the right to confront witnesses.

**¶19** The State is correct that when a defendant is represented by counsel, his confrontation rights are satisfied if he is in the courtroom and can face the witness while his counsel conducts cross-examination. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987) ("The Confrontation Clause provides two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination."). But because a self-represented defendant has the right to personally cross-examine the witnesses, *McKaskle*, 465 U.S. at 174, restricting a defendant from doing so *is* a restriction on his right to confrontation—and a significant one at that. *State v. Folk*, 256 P.3d 735, 745 (Idaho 2011) ("Cross-examination is often a fluid process, and the person forming the questions must be able to concentrate on the answers and what further questions are necessary to elicit the desired information."). Moreover, imposing an unusual arrangement such as requiring advisory counsel to cross-examine critical witnesses in place of the defendant could affect the jurors' perception of the defendant. *Cf. Estelle v. Williams*, 425 U.S. 501, 504–05 (1976) (fearing the jurors' judgment may be affected by viewing defendant in jail clothing). Because a self-represented defendant's right to personally cross-examine witnesses is so important in the trial process, any restriction on that right can occur only upon a showing that the restriction is necessary to achieve an important public policy—here, to protect child witnesses from the trauma of being personally cross-examined by the defendant.

**¶20** Third, the State argues that the restriction is appropriate because no case-specific or individualized findings are necessary in cases involving child abuse or sex offenses against children. Although not so stated, the State essentially argues that a court should presume trauma when child witnesses are involved. This argument directly counters the holdings of *Coy*, *Vincent*, and *Vess* that trauma will *not* be presumed and

that restrictions on cross-examination must be based on individualized findings of necessity. *Coy*, 487 U.S. at 1021; *Vincent*, 159 Ariz. at 428–29, 768 P.2d at 160–61; *Vess*, 157 Ariz. at 238, 756 P.2d at 335.

**¶21** The authority that the State cites to support its position, *Fields v. Murray*, has dubious value. In *Fields*, the Fourth Circuit Court of Appeals considered a state defendant's claim on habeas corpus review that the state court had denied him his right to personally cross-examine the child victims who had alleged that he had sexually abused them. 49 F.3d at 1028. The state court had precluded him from doing so without hearing evidence and based its ruling on the nature of the crimes and the defendant's relationship with the victims. *Id.* at 1036.

**¶22** The circuit court ruled that the state court's decision did not violate the right to confrontation. *Id.* The circuit court recognized that the state court should have made a "more elaborate finding" as *Craig* requires, but noted that "[i]t is far less difficult to conclude that a child sexual abuse victim will be emotionally harmed by being personally cross-examined by her alleged abuser than by being required merely to testify in his presence." *Id.* This conclusion, however, rests merely on a general presumption of trauma, which is directly contrary to *Coy*, *Vincent*, and *Vess*. Thus, it is not good law in Arizona and we are not bound to follow it. *See State v. Montano*, 206 Ariz. 296, 297 n.1, 77 P.3d 1246, 1247 n.1 (2003) (holding that the Arizona Supreme Court is not bound by federal circuit court's interpretation of the federal constitution).

**¶23** The State also justifies its argument on the Victim's Bill of Rights, highlighting a victim's right to be free from intimidation, harassment, and abuse. Self-representation and confrontation of witnesses, however, are bedrock constitutional rights of our criminal justice system and are not lightly restricted. If victims' rights conflict with a defendant's constitutional rights, the defendant's rights must prevail. *State v. Riggs*, 189 Ariz. 327, 330–31, 942 P.2d 1159, 1162–63 (1997) ("[I]f, in a given case, the victim's state constitutional rights conflict with a defendant's federal constitutional rights to due process and effective cross-examination, the victim's rights must yield. The Supremacy Clause requires that the Due Process Clause of the U.S. Constitution prevail over state constitutional provisions.").

**¶24** This does not mean that victims cannot be protected. If the State believes that a defendant's personal cross-examination of a witness is intimidating or harassing the witness, it may always ask the court to control the examination. *See* Ariz. R. Evid. 611(a)(3) (providing that the court

should "exercise reasonable control" over the mode of examining witnesses to "protect witnesses from harassment or undue embarrassment"). If the State believes that a defendant's personal cross-examination of a witness would cause particular trauma to the witness, it can—consistent with the United States Constitution—present evidence that the trauma will occur and ask the trial court to make case-specific findings that will justify restricting the defendant from personally cross-examining the witness.

¶25        The trial court invited the State to present evidence of trauma, but the State declined the opportunity. Without evidence showing that the child witnesses would suffer particular trauma from being personally cross-examined by Simcox, the trial court had no constitutional basis to restrict Simcox from doing so. Thus, on this record, the trial court properly denied the State's request.[1]

## CONCLUSION

¶26        For these reasons, we accept jurisdiction but deny relief.



Ruth A. Willingham · Clerk of the Court
FILED: ama

---

[1]        If the State subsequently discovers evidence that it believes would justify restricting Simcox's right to personally cross-examine the child witnesses, however, nothing in this opinion would preclude the State from making a new request to the trial court.